

# NUMBER 13-21-00169-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PORT ISABEL LOGISTICAL
OFFSHORE TERMINAL, INC.,                                            Appellant,

v.

SUBSEA 7 PORT ISABEL, LLC,                                          Appellee.

On appeal from the 107th District Court
of Cameron County, Texas.



# NUMBER 13-21-00368-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE PORT ISABEL LOGISTICAL OFFSHORE TERMINAL, INC.

## On Petition for Writ of Mandamus, Prohibition, and/or Injunction.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Chief Justice Contreras**

Appellant/relator Port Isabel Logistical Offshore Terminal, Inc. (PILOT) has filed a motion for rehearing and for en banc reconsideration in this appeal and parallel original proceeding. *See* TEX. R. APP. P. 49.1, 49.5. Appellee/real party in interest Subsea 7 Port Isabel, LLC (Subsea) filed responses to the motions, and PILOT filed a reply to the responses. We deny PILOT's motions for rehearing but withdraw our March 10, 2022 memorandum opinion and substitute the following memorandum opinion in its place. We further withdraw our March 10, 2022 judgment in appellate cause number 13-21-00169-CV and substitute the accompanying judgment in its place. The motions for en banc

2

reconsideration are dismissed as moot.

In the latest of several proceedings before this Court arising out of this case, PILOT argues that the trial court[1] erred in signing an order on May 5, 2021, allowing Subsea to remove improvements and property from the premises it had subleased from PILOT.

We affirm the trial court's judgment and deny PILOT's petition for extraordinary writ. However, we will grant one of PILOT's two motions to review the supersedeas amount under Texas Rule of Appellate Procedure 24.4.

## I.    BACKGROUND

### A.    2016 Trial and 2017 Appeal

Beginning in 2007, PILOT leased around fifty-four acres of property at the port of Port Isabel, Texas, from the Port Isabel-San Benito Navigation District. In 2008, Subsea entered into an agreement with PILOT to sublease around half of the property, which Subsea intended to use as a "spoolbase" for undersea pipeline operations. The sublease agreement stated that it would terminate on May 31, 2012, unless Subsea notified PILOT in writing before March 31 of that year that it wished to exercise its option to extend the lease for another four-year term. The sublease agreement also stated:

> [Subsea] also agrees that, upon termination of this Sublease, [Subsea] shall have the option to either (i) leave the Sublease Premises in the condition that the Sublease Premises are in at the conclusion of this Sublease, or (ii) remove any or all property and improvements then located on the Sublease Premises, provided that [Subsea] shall be responsible for any costs or expense to repair any physical damage to the Sublease Premises caused by such removal, and further provided [Subsea] shall not be entitled to remove "[Subsea]'s Dock" (hereinafter defined). Notwithstanding the foregoing, [PILOT] acknowledges that [Subsea] intends to add crushed rock to the Sublease Premises that may or may not be removed upon termination

---

[1] The respondent in the original proceeding is the Hon. Benjamin Euresti Jr., presiding judge of the 107th District Court of Cameron County, Texas.

3

of this Sublease, at [Subsea]'s option.

Subsea attempted to renew the sublease in 2012, and it remained in possession of the property. However, Subsea failed to notify PILOT in writing of its intent to renew the sublease until after March 31, 2012. Accordingly, PILOT deemed Subsea to be a holdover tenant in violation of the sublease agreement, and it sent an eviction notice to Subsea in April of 2014. Subsea declined to vacate the premises, claiming that its renewal was valid for various reasons. The parties filed lawsuits against each other, which were consolidated in Cameron County. After trial, the jury found that (1) the parties did not orally agree to modify the renewal provisions of the sublease such that Subsea's timely oral notification was sufficient to renew the sublease; (2) PILOT is not estopped from denying that Subsea renewed the sublease; (3) PILOT did not waive strict compliance with the renewal provisions of the sublease agreement; (4) Subsea trespassed on PILOT's property; (5) PILOT is entitled to $634,710 in damages for the trespass; and (6) Subsea did not substantially and foreseeably rely to its detriment on PILOT's promise, if any, that Subsea did not need to send written notice of renewal before March 31, 2012.

On December 13, 2016, the trial court rendered judgment in accordance with the jury's verdict, awarding PILOT $634,710 in trespass damages as well as pre-judgment interest on that award beginning on June 1, 2014. The judgment also stated:

4.      [Subsea] may remove any or all property and improvements located on the [subject property] (including crushed rock), until thirty days from the date of this Judgment or the expiration of any period during which this Final Judgment is superseded by the filing of a bond (or cash in lieu of bond) in accordance with Texas Rule of Appellate Procedure 24, provided that [Subsea] shall be responsible for any costs or expense to repair any physical damage to the property caused by such removal, and further provided that [Subsea] shall not be entitled to remove the dock located on the property; and

5.      All property, whether real or personal, including without limitation

4

fixtures and improvements, remaining on the [subject property] after the expiration of thirty days from the date of this Judgment or after the expiration of any period during which this Final Judgment is superseded by the filing of a bond (or cash in lieu of bond) in accordance with Texas Rule of Appellate Procedure 24, is solely and exclusively the property of PILOT.

Both parties perfected appeals from this judgment (the 2017 appeal).

Pursuant to Subsea's motion, the trial court also rendered an order providing that Subsea may supersede the judgment under Texas Rule of Appellate Procedure 24 by posting a bond, or cash in lieu thereof, in the amount of $1,200,829.58 plus post-judgment interest.[2] *See* TEX. R. APP. P. 24.1. The order setting the bond amount stated in part:

IT IS FURTHER ORDERED that upon posting the bond, [Subsea] shall have the right to remain in immediate possession of the sublease premises during the pendency of the appeal process in this case, and shall have full use and enjoyment of the sublease premises subject to and in accordance with the terms of the Sublease without interference (except as allowed under the Sublease) from [PILOT] during the appeal process and so long as the bond remains in place.

IT IS FURTHER ORDERED that the posting of a bond and remaining on the premises during the pendency of the appeal process in this case shall in no way be construed as a waiver of [Subsea]'s ownership and right to remove the improvements from the premises.

Subsea then deposited $1,237,000 with the Cameron County District Clerk, thereby suspending enforcement of the judgment. *See id.* Later, pursuant to motions filed by PILOT, the trial court rendered orders increasing Subsea's supersedeas amount by $960,000 and then by an additional $76,966.47. *See* TEX. R. APP. P. 24.3(a) (stating that, even after its plenary power expires, the trial court may modify the amount or type of security required to suspend the judgment). Subsea timely made the additional deposits.

---

[2] This amount includes: (1) $634,710, representing the trespass damages awarded by the jury; (2) $485,694, representing fair market rent of the sublease premises, as calculated by the jury, for twelve months; (3) pre-judgment interest of $80,425.58; and (4) "[p]ost-judgment interest for one year on the total of the trespass damages and the pre-judgment interest amounts."

We subsequently denied Subsea's motion to reduce the supersedeas amount. *See* TEX. R. APP. P. 24.4.

PILOT also moved for the trial court to set a supersedeas amount so that it could suspend the portion of the judgment allowing Subsea to remove improvements. On November 2, 2017, the trial court rendered an order setting that amount at $168,000, and PILOT made a cash deposit in that amount, thereby suspending enforcement of that part of the judgment.

**B.      Agreed Temporary Injunction**

With the appeal still pending, the trial court signed an "Agreed Temporary Injunction Order" on March 5, 2019, stating in part that Subsea shall remain in possession of the sublease premises. The agreed order stated that the relief "is necessary to maintain the status quo pending resolution of the parties' appeals" and "shall remain in effect until further order of this Court." There is nothing in the record indicating that this order was ever explicitly withdrawn or vacated.

**C.      2019 Opinion**

On June 20, 2019, we handed down our opinion in the 2017 appeal, concluding: (1) there was legally sufficient evidence to support the jury's rejection of Subsea's affirmative defenses of equitable estoppel, quasi-estoppel, and waiver; (2) there was legally sufficient evidence to support the jury's award of $634,710 in trespass damages; (3) the trial court did not err by declining to award attorney's fees to PILOT; and (4) the court did not err in allowing Subsea to remove its property and improvements within thirty days of the judgment or the expiration of supersedeas; but (5) the amount of pre-judgment interest should be recalculated because some of the trespass damages accrued after

6

June 1, 2014. *Subsea 7 Port Isabel, LLC v. Port Isabel Logistical Offshore Terminal, Inc.*, 593 S.W.3d 859, 868–83 (Tex. App.—Corpus Christi–Edinburg 2019, pet. denied). We therefore remanded to the trial court for recalculation of pre-judgment interest but affirmed the remainder of the judgment. *See id.* Following PILOT's motion for rehearing, we issued a substitute opinion on December 19, 2019, but did not change our disposition. *See id.* PILOT then filed a petition for review with the Texas Supreme Court, challenging our ruling regarding Subsea's removal of improvements. The supreme court denied the petition on April 24, 2020, and it denied PILOT's motion for rehearing on the denial of the petition on August 28, 2020. Accordingly, we issued our mandate on September 2, 2020. *See* TEX. R. APP. P. 18.1.

## D.     Proceedings on Remand

### 1.     Subsea's Motion for Entry of Modified Judgment

On remand, Subsea filed a "Motion for Entry of Modified Judgment and for Disbursement of Funds on Deposit in the Court's Registry." It argued in this motion that, to comply with our ruling, the judgment should be modified to award PILOT pre-judgment interest of $40,800.39. *See Subsea*, 593 S.W.3d at 878 (holding that "to conform with principles of equity, interest must begin accruing on a monthly basis for each post-suit breach" (internal quotation omitted)). Subsea further noted in this motion that, because PILOT's petition for review had been denied by the Texas Supreme Court, "[Subsea] has the right to remove its property and improvements (including crushed rock)"; it further contended that "[t]he only impediment to that removal is the stay of the judgment created by the cash in lieu of bond PILOT posted." Subsea therefore requested that the trial court

7

"dissolve the stay" and grant it 120 days to complete the removal process.[3]

PILOT filed a response to the motion on November 16, 2020, in which it agreed with the amount of pre-judgment interest proposed by Subsea. However, PILOT argued that, because this Court did not disturb the trial court's judgment regarding removal of improvements, the deadline for such removal expired on October 2, 2020—thirty days after we issued the mandate—and the improvements on the property now belong to PILOT. It alleged that it was entitled to reimbursement of the full amount of the supersedeas deposit it made, as well as additional amounts "to cover the remaining rents," and "to recover the profits lost as a result of the appeal."

2. **Subsea's Motion to Dissolve Stay, PILOT's Motion to Stay Removal, and Subsea's Emergency Motion to Enforce Bond**

On November 20, 2020, Subsea filed a "Motion to Dissolve Stay to Allow Removal of Property and Improvements" in which it again argued that the "existence" of PILOT's cash deposit in lieu of supersedeas bond "is what prevents [Subsea] from removing its property and improvements." Subsea contended that the issuance of our mandate on September 2, 2020 did not, by itself, "dissolve" the "stay" which had been imposed as a result of PILOT's deposit. Instead, citing Texas Rule of Appellate Procedure 43.5, it argued that a court of appeals' judgment must "expressly address supersedeas bonds and sureties." *See* TEX. R. APP. P. 43.5. Subsea therefore asked the trial court to "issue an order dissolving the stay." It further claimed in this motion that, because we reversed the trial court's judgment in part and remanded the case to the trial court, "there is no presently subsisting judgment" and "any deadline to remove [improvements] cannot begin

---

[3] Subsea cited *A&M Petroleum Co. v. Friar*, 152 S.W.2d 470, 471 (Tex. App.—El Paso 1941, no writ), for the proposition that a tenant who reserves the right to remove improvements at the end of the lease "has a reasonable time after the expiration thereof in which to remove such improvements."

8

to run until after . . . a new judgment is signed."

In response, PILOT disputed Subsea's claim that PILOT's cash deposit generated a "stay"; instead, it argued that the deposit served merely to "suspend[] enforcement of the judgment pending appeal" and that this suspension automatically ended upon the issuance of our mandate. It further argued that, since we affirmed the trial court's December 13, 2016 judgment in part, "execution may take place" because "the supersedeas bond no longer suspends enforcement of the affirmed portion of the judgment."

Following a hearing on December 8, 2020, the trial court orally granted Subsea's motion to dissolve stay, stated that Subsea "may remove their property from the sublease premises," and ordered that PILOT's cash deposit be returned to PILOT. PILOT's counsel then advised the trial court that it would be filing a petition for writ of mandamus with this Court and asked the trial court to stay its own ruling while that proceeding is pending. PILOT filed a "Motion to Stay [Subsea]'s Removal of Improvements" reiterating that request.

After another hearing, Subsea filed an "Emergency Motion to Enforce Bond and Agreed Temporary Injunction" in which it claimed that PILOT changed the locks of the subject premises and erected other "impediments to access," thereby preventing Subsea from entering the premises "to make an inspection to prepare for eventual removal of property and improvements." Subsea claimed that this violated the terms of the Agreed Temporary Injunction Order, and it asked for an order directing PILOT to remove the locks and other "impediments to access." No ruling on this motion appears in the record.

The trial court issued a written order on December 16, 2020, granting PILOT's

motion to stay and staying Subsea's removal of property for thirty days from the date of the order. The order also stated that "the clerk is no longer directed to return the $168,000.00 deposited by PILOT in lieu of bond during this stay." The trial court later extended the stay until January 22, 2021.

### 3. 2020 Mandamus Petition

PILOT filed a petition for writ of mandamus with this Court on December 23, 2020, in which it argued that the trial court abused its discretion by "enter[ing] an order in violation of the mandate and the trial court's judgment." Specifically, PILOT contended that this Court's September 2, 2020 mandate in the 2017 appeal "signaled the end of the appeal" and the end of the period during which the trial court's judgment was suspended; therefore, it asked us to direct the trial court to withdraw its December 8, 2020 oral ruling and instead rule that Subsea's deadline to remove improvements had expired. On January 18, 2021, PILOT filed an "Emergency Motion for Stay" with this Court asking us to stay the trial court's December 8, 2020 oral ruling until such time as we could consider the merits of the mandamus petition. We granted the emergency motion for stay on January 20, 2021. After receiving Subsea's response to the mandamus petition and PILOT's reply to that response, we vacated the stay and denied the petition. *In re Port Isabel Logistical Offshore Terminal, Inc.*, No. 13-20-00562-CV, 2021 WL 1536591, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 19, 2021, orig. proceeding) (mem. op.) (concluding that PILOT failed to meet its burden to obtain mandamus relief).

### 4. PILOT's Motion to Disburse and Emergency Motion to Stay

Before we denied its mandamus petition, PILOT filed a "Motion to Disburse Undisputed Money Owed to PILOT From Funds on Deposit in Court's Registry" with the

trial court on March 3, 2021. In this motion, PILOT noted that we already affirmed the trespass damages award; that the parties agree on the proper pre-judgment interest amount on that award; and that the mandamus proceeding concerns only the provision of the trial court's judgment allowing Subsea to remove improvements. Therefore, PILOT maintained that it is "undisputed" that it is owed $830,085.32 from the amount Subsea deposited into the trial court's registry, representing the original trespass damages award, the agreed amount of pre-judgment interest, and post-judgment interest.

In its response, Subsea urged the trial court to deny the motion because: (1) the pre-judgment interest issues "are intertwined with the issues currently pending" in the mandamus proceeding; and (2) PILOT "should not be permitted to indefinitely delay [Subsea]'s rights under the judgment and, at the same time, enforce those parts of the judgment that benefit PILOT." Subsea argued that the trial court should "wait to resolve the remand issues" until the mandamus proceeding is concluded.

A hearing was held on March 23, 2021, after which the trial court deferred ruling on the motion to disburse "until the Court of Appeals rules on other issues that are involved at this time." Subsequently, we denied PILOT's mandamus petition. *See id.* PILOT then filed an "Emergency Motion for Stay" with the trial court, noting that our mandamus ruling was not a decision on the merits and that it intended to appeal the trial court's judgment concerning removal of improvements once that judgment is made final and memorialized in writing. It asked the trial court to stay Subsea's removal of improvements until the appeal can be heard. In the alternative, PILOT asked the trial court to set an additional supersedeas amount so that PILOT can suspend enforcement of the forthcoming final judgment. Subsea responded to PILOT's emergency motion by arguing:

11

(1) PILOT is not entitled to appeal the trial court's order regarding removal of improvements; (2) mandamus was the "proper vehicle to review" the trial court's order; (3) the pre-judgment interest issue does not need to be resolved before Subsea can begin removal of improvements; and (4) there are no other issues that need to be resolved before removal can begin.

After another hearing on April 27, 2021, the trial court ruled that the amount of pre-judgment interest on the trespass damages would be $40,800.39, as the parties agreed. The trial court further ruled that PILOT's supersedeas amount would be increased from $168,000 to $200,000, and that "all bonds remain in place."

### 5.      Trial Court's May 2021 Orders and Post-Judgment Proceedings

On May 4, 2021, the trial court signed an "Order Discharging PILOT's Bond," which states that Subsea's Motion to Dissolve Stay is granted; orders "that the stay created by PILOT's cash deposit in lieu of bond on November 8, 2017 is dissolved"; and states that "the bond is discharged." The order states that Subsea "may proceed with the removal of the remainder of its property and improvements (including crushed rock)."

The next day, the trial court signed an "Order on Prejudgment Interest and PILOT's Motion to Set a Bond," which memorializes the oral rulings made at the April 27, 2021 hearing. As directed by the trial court at that hearing, PILOT deposited an additional $32,000 into the court's registry, thereby suspending enforcement of the ruling which was reiterated in the May 4 order. *See* TEX. R. APP. P. 24.1. PILOT then perfected the instant appeal[4] challenging the May 5 order.

While the appeal was pending, on October 11, 2021, Subsea filed with the trial

---

[4] Appellate cause no. 13-21-00169-CV.

12

court a "Motion to Increase Bond and for Access to the Sublease Premises," arguing that "the cost for removing the property and improvements has increased by $350,000" and "the current bond amount is insufficient to protect [Subsea]." Subsea also asked the trial court to permit it to access the subject premises while the appeal is pending so that it can "inspect and make preparations for the future removal of [its] property and improvements." In response, PILOT argued that, under Texas Rule of Appellate Procedure 24.2, "[t]he proper standard for a supersedeas bond for personal property is the value of the property," and it noted that Subsea did not allege that the value of the improvements on the subject property had changed.

The trial court granted Subsea's motion to increase bond on October 26, 2021, and signed an order stating that PILOT must post an additional $150,000 in order to suspend the 2016 judgment. The order further stated that Subsea "shall be permitted to enter the Sublease Premises on three days during the hours of 8:00 a.m. to 6:00 p.m." "for the purposes of inspecting the property and improvements, preparing for removal, and obtaining necessary permits." The order stated Subsea "shall be permitted to bring a maximum of four people to the Sublease Premises" for this purpose and PILOT "shall be permitted to have a representative accompany the [Subsea] representatives while they are on the Sublease Premises." On November 15, 2021, PILOT deposited the additional $150,000 necessary to suspend enforcement of the judgment.

## E.    Instant Proceedings

PILOT filed the instant "Petition for Writ of Mandamus, Prohibition, and/or Injunction"[5] with this Court on October 27, 2021. Within the petition, PILOT asked for an

---

[5] Appellate cause no. 13-21-00368-CV.

emergency stay of the trial court's October 26 order, and we granted that relief. Pursuant to our request, Subsea filed a response to the petition; PILOT filed a reply to the response.

On August 4, 2021, PILOT filed a "Rule 24.4 Motion to Release [Subsea] Cash in Lieu of Bond" (PILOT's First Rule 24.4 Motion) in the instant appeal, arguing as it did in the trial court that, because the trespass damages are not challenged in the appeal, PILOT is entitled to immediate disbursement of those damages, plus interest, from the amounts deposited by Subsea in the trial court's registry. Subsea replied by arguing that Texas Rule of Appellate Procedure 24.4 does not allow an appellate court to "order disbursement of a part of the cash in lieu of bond while the appeal is pending." Subsea further argued that its deposit does not only supersede the trespass damages but also "protects [Subsea]'s right to remove its property and improvements."

Subsea filed an amended motion to dismiss the appeal on October 14, 2021, arguing that the order PILOT seeks to challenge is not appealable because it is a post-judgment enforcement order. In its response, PILOT contended that the May 5, 2021 order cannot be a "post-judgment enforcement order" because there was no previously-rendered final judgment in effect at the time which could be enforced.

Finally, on November 9, 2021, PILOT filed a "Rule 24.4 Motion Challenging Supersedeas Amount and Request for Emergency Stay" (PILOT's Second Rule 24.4 Motion), challenging the trial court's October 26, 2021 order increasing PILOT's supersedeas amount, and asking us to stay that order until the motion can be ruled upon. In response, Subsea argued that the increase was supported by competent evidence and was proper. PILOT filed a reply. We carried PILOT's Rule 24.4 Motions and Subsea's amended motion to dismiss with the case.

14

## II. DISCUSSION

By a multifarious first issue in its appeal, PILOT contends: (1) the supersedeas "bond" expired on the date we issued our mandate; (2) the "suspension effect" of its cash deposit in lieu of bond expired on that same date; (3) the trial court cannot "enter an order that is not addressed in the mandate after the appeal is over"; (4) the trial court's order "exceed[ed] the scope of the mandate," was "inconsistent with a previously-affirmed judgment," and was "not related to the singular issue for which the case [was] remanded"; and (5) a supersedeas bond or cash in lieu thereof does not create a "stay" which the trial court is required to lift after the appeal is resolved. By its second issue on appeal, PILOT contends the court reversibly erred by granting an extension "of undetermined time" allowing Subsea to remove improvements "substantially more than 30 days after the expiration of the period during which the final judgment was superseded."

### A. Removal of Improvements

The central substantive issue raised in these proceedings is whether the trial court erred by: (1) concluding in its May 4, 2021 order that Subsea "may proceed with the removal of the remainder of its property and improvements (including crushed rock)" from the subject premises; and (2) setting forth procedures for Subsea to prepare for such removal in its October 26, 2021 order.

In its appeal, PILOT contends the May 4, 2021 order was improper because the thirty-day period for removal of improvements had already expired by the time the order was made. As noted, the sublease agreement granted Subsea the option to remove its property and improvements from the premises upon termination of the lease. However, except to say that the option would be effective "upon termination of this Sublease," the

15

agreement was silent as to how the removal would proceed. In particular, the agreement did not specify the length of time that Subsea would be given to remove its improvements should it elect to do so, and it did not specify when that time period would begin. After the jury found in favor of PILOT on its claims, the trial court rendered its judgment in 2016 stating that Subsea shall have "until thirty days from the date of this Judgment or the expiration of any period during which this Final Judgment is superseded by the filing of a bond (or cash in lieu of bond) in accordance with Texas Rule of Appellate Procedure 24" to remove its improvements. Per the judgment, any property or improvements remaining on the premises after the thirty-day time period would become the property of PILOT. The principal questions in this case are whether and when that thirty-day period began, and whether and when it expired.

In the 2017 appeal, PILOT argued that, because the jury found Subsea had failed to effectively renew the sublease, the thirty-day time period for removal of improvements began on May 31, 2014, the day the initial sublease term ended, and ended thirty days later on June 30, 2014, pursuant to the sublease agreement. We disagreed, holding that "Subsea did not intentionally waive its right to retrieve its property and improvements from the sublease premises" because it "consistently asserted that the sublease had not terminated." *Subsea*, 593 S.W.3d at 882. Thus, we affirmed the portion of the judgment stating that the thirty-day period instead begins on "the date of this Judgment or the expiration of any period during which this Final Judgment is superseded by the filing of a bond (or cash in lieu of bond)," and the Texas Supreme Court refused PILOT's petition for review challenging our ruling in this regard. *See id.* at 880–83.

In the instant appeal, PILOT argues that the "period during which [the 2016] Final

16

Judgment is superseded by the filing of a bond (or cash in lieu of bond) in accordance with Texas Rule of Appellate Procedure 24" ended on September 2, 2020, when we issued our mandate in the 2017 appeal. PILOT asserts that there was no need for the trial court to render an order declaring that enforcement of the judgment was no longer suspended. PILOT thus contends that the thirty-day time period for Subsea to remove its improvements began on that day and ended thirty days later on October 2, 2020. According to PILOT, because Subsea failed to retrieve its improvements and property from the premises before October 2, 2020, all of those improvements now belong to PILOT.

To support its argument, PILOT cites cases observing that appeals are not considered "final" until the appeals court issues its mandate. *See In re Long*, 984 S.W.2d 623, 626 (Tex. 1999) (orig. proceeding) (per curiam) (noting that "the Clerk was not obligated to comply with the injunction until the appeals were final and mandate issued"); *In re City of Cresson*, 245 S.W.3d 72, 74 (Tex. App.—Fort Worth 2008, orig. proceeding) (noting that the appellate "court's judgment is not enforceable in the trial court until it is final and mandate issues"). PILOT further points to Texas Rule of Appellate Procedure 51.1(b), which states:

> *Enforcement of Judgment.* When the trial court clerk receives the mandate, the appellate court's judgment must be enforced. Appellate court costs must be included with the trial court costs in any process to enforce the judgment. If all or part of the costs are collected, the trial court clerk must immediately remit to the appellate court clerk any amount due to that clerk. The trial court need not make any further order in the case, and the appellate court's judgment may be enforced as in other cases, when the appellate judgment:
>
> (1) affirms the trial court's judgment;
>
> (2) modifies the trial court's judgment and, as so modified, affirms that judgment; or

(3)     renders the judgment the trial court should have rendered.

TEX. R. APP. P. 51.1(b). PILOT argues that, pursuant to this rule, the suspension of the trial court's judgment terminated as soon as our mandate was issued. Finally, PILOT also cites a treatise for the proposition that "[s]uperseding a judgment is operative only during the pendency of the appeal, and once the appeal is final, the enforcement of the judgment is no longer suspended." 6 ROY W. MCDONALD & ELAINE CARLSON, TEXAS CIVIL PRACTICE § 14:20 (2nd ed.).

To the contrary, Subsea alleges that the issuance of our mandate did not automatically terminate the suspension effect of PILOT's deposit in lieu of bond. It points to Texas Rule of Appellate Procedure 43.5, which provides:

> When a court of appeals affirms the trial court judgment, or modifies that judgment and renders judgment against the appellant, the court of appeals must render judgment against the sureties on the appellant's supersedeas bond, if any, for the performance of the judgment and for any costs taxed against the appellant.

TEX. R. APP. P. 43.5. Subsea acknowledges that this rule does not apply in this case, given that both parties made cash deposits in lieu of bond, and there are no sureties against which to render judgment. Nevertheless, Subsea contends that "there would be no need" for this rule if an appellate court's mandate automatically ended the period during which execution of the judgment is suspended.

Neither Rule 51.1(b) nor Rule 43.5 explicitly addresses the question of when a judgment ceases to be superseded, and we do not believe that they are meaningfully relevant to that question. Though Rule 43.5 provides that an appeals court must render judgment against a surety on a supersedeas bond, it does not apply to cash deposits in lieu of bond, and it does not imply that the trial court must render an additional order to terminate the suspension of execution created by a supersedeas bond. *See* TEX. R. APP.

18

P. 43.5. And though Rule 51.1(b) states that the *appeals court's* judgment must be enforced upon issuance of the mandate, it does not say that the *trial court's* judgment must be enforced at that time. *See* TEX. R. APP. P. 51.1(b). Indeed, such a rule would be nonsensical in a situation, such as this one, where the trial court's judgment is at least partially reversed and remanded, resulting in a non-final judgment.

Subsea contends that, because the 2016 judgment was no longer "final" as of the time we issued our mandate, "any enforcement or execution" of the 2016 judgment at that time—such as an order allowing Subsea to immediately remove its improvements— "would [have] be[en] premature and improper." We agree.

As Subsea notes, execution cannot issue on a judgment that is not final. *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 831 (Tex. 2005) (orig. proceeding); *Hughes v. Habitat Apartments*, 828 S.W.2d 794, 795 (Tex. App.— Dallas 1992, no writ) (citing *Rose v. Dominguez*, 669 S.W.2d 866, 867–68 (Tex. App.— Corpus Christi–Edinburg 1984, no writ)); *see* TEX. R. CIV. P. 622 ("The clerk of the district or county court or the justice of the peace, as the case may be, shall tax the costs in every case in which a final judgment has been rendered and shall issue execution to enforce such judgment and collect such costs."). Rule 51.1(b) reflects this tenet of law. It states that, following the appeals court's mandate, the trial court "need not make any further order in the case" before the appeals court's judgment may be enforced, but this only applies in cases where the appeals court has affirmed, affirmed as modified, or reversed and rendered—i.e., when the appeals court's ruling results in a *final* judgment. *See* TEX. R. APP. P. 51.1(b). Rule 51.1(b) strongly implies that, when an appeals court remands for further necessary proceedings, the trial court *must* make further orders in the case—i.e.,

19

it must rule on the remanded issues—before enforcement may begin.

PILOT observes that, according to Paragraph 4 of the 2016 judgment, Subsea shall have "until thirty days from the date of *this* Judgment or the expiration of any period during which *this* Final Judgment is superseded by the filing of a bond (or cash in lieu of bond)" to remove its improvements (emphasis added). PILOT contends that, because we did not disturb Paragraph 4 on appeal, the thirty-day period began as soon as our mandate issued—i.e., when "this Judgment" ceased to be superseded. But the clear intent of the trial court in fashioning this specific remedy was to ensure that the thirty-day period begins at the time the *entire* judgment is final and enforceable, and no sooner. If, as PILOT argues, the thirty-day period began immediately at the time we issued our mandate, that would violate the well-established rule prohibiting execution on a non-final judgment. *See In re Burlington*, 167 S.W.3d at 831; *Hughes*, 828 S.W.2d at 795 (citing *Rose*, 669 S.W.2d at 867–68); *see also* TEX. R. CIV. P. 622. We will not construe the 2016 judgment in this manner.

Further, we disagree with PILOT's assertion that the trial court exceeded the scope of our mandate. "A mandate is an appellate court's formal command requiring the lower court to comply with the appellate court's judgment." *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 699 (Tex. App.—Dallas 2019, no pet.); *Tex. Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 347 (Tex. App.—Austin 2007, pet. denied); *In re Marriage of Grossnickle*, 115 S.W.3d 238, 243 (Tex. App.—Texarkana 2003, orig. proceeding); *see also* TEX. R. APP. P. 18, 51.1(b). When an appellate court reverses a lower court's judgment and remands the case to the trial court, the trial court is authorized to take all actions that are necessary to give full effect to the appellate court's judgment and

mandate. *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013); *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (orig. proceeding) (per curiam); *Scott Pelley P.C.*, 578 S.W.3d at 699. However, the trial court "has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate." *Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 408 (Tex. 2016) (quoting *Phillips*, 407 S.W.3d at 234); *see Scott Pelley P.C.*, 578 S.W.3d at 699. The appellate court's mandate and judgment do not limit the trial court's jurisdiction to preside over the case and enter a judgment on remand but instead limit the trial court's authority in exercising that jurisdiction. *Phillips*, 407 S.W.3d at 234. When a trial court exceeds its authority under a mandate, the resulting judgment is erroneous. *Phillips*, 407 S.W.3d at 234. "The scope of the mandate is determined with reference to both the appellate court's opinion and the mandate itself." *Scott Pelley P.C.*, 578 S.W.3d at 699.

In 2019, we affirmed the majority of the 2016 judgment, including Paragraphs 4 and 5, but reversed and remanded for a determination of the proper amount of pre-judgment interest. *Subsea*, 593 S.W.3d at 878. The trial court's May 4, 2021 order did not substantively modify Paragraphs 4 or 5, but rather clarified that Subsea "may proceed" with the removal. In that sense, the May 4 order constituted an enforcement order which the trial court was authorized to render without regard to the scope of our mandate. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam) ("Unlike plenary power, which generally only lasts for thirty days after final judgment, a trial court's post-judgment enforcement powers can last until the judgment is satisfied." (Internal quotation and footnote omitted)). Under

21

these circumstances, we conclude the court did not err by directing in the May 4 order that Subsea "may proceed with the removal of the remainder of its property and improvements (including crushed rock)."

PILOT argues by its second issue that the order was erroneous because it allowed Subsea "substantially more than 30 days" to remove its improvements. We agree, theoretically, that the trial court lacked authority to grant Subsea an indefinite or "undetermined" time to remove improvements because such a ruling would be inconsistent with the 2016 judgment, which allowed Subsea only thirty days for that purpose and which is no longer subject to appeal. *See Seger*, 503 S.W.3d at 408. However, we disagree that the trial court's May 4, 2021 order grants Subsea more than thirty days for removal; instead, it merely states that Subsea "may proceed" with the removal. We emphasize that the portion of the 2016 judgment providing that Subsea shall have thirty days within which to remove its improvements remains undisturbed. Pursuant to the 2016 judgment and in accordance with our analysis herein, the thirty-day period shall begin immediately when the trial court's judgment, having disposed of all issues and parties, becomes final and unassailable after all appeals are exhausted.

For the foregoing reasons, we overrule PILOT's issues on appeal and deny Subsea's amended motion to dismiss the appeal as moot.

## B.    Petition for Extraordinary Writ

In its "Petition for Writ of Mandamus, Prohibition, and/or Injunction," PILOT argues the following six issues: (1) the trial court abused its discretion by allowing Subsea's "bond" to stay in place, even though Subsea has not appealed the judgment; (2) the trial court abused its discretion by allowing Subsea to enter the subject property to prepare to

22

remove improvements, even though the judgment allowing such removal is the basis of this appeal; (3) the trial court's orders interfere with this Court's jurisdiction; (4) the trial court's orders and Subsea's "attempt to enforce the judgment" alter the status quo; (5) PILOT lacks an adequate remedy by appeal; and (6) a writ of mandamus, prohibition, and/or injunction should be issued.

### 1. Standard of Review and Applicable Law

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *see Walker*, 827 S.W.2d at 840. A trial court abuses its discretion when it acts with disregard for guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d at 840. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

Texas Rule of Appellate Procedure 24, entitled "Suspension of Enforcement of

Judgment Pending Appeal in Civil Cases," provides that a judgment debtor "may supersede the judgment" by posting a bond or making a cash deposit in lieu thereof. TEX. R. APP. P. 24.1(a)(2), (3); *see* TEX. R. APP. P. 24.1(f) ("Enforcement of a judgment must be suspended if the judgment is superseded."); *see also In re Tarrant County*, 16 S.W.3d 914, 918 (Tex. App.—Fort Worth 2000, orig. proceeding) ("Supersedeas preserves the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken.").

### 2. Analysis

By its first issue in its petition for extraordinary writ, PILOT argues that Subsea's cash deposit in lieu of supersedeas bond should be disbursed to it, up to the amount of the trespass damages award plus interest, because "there is nothing for Subsea to supersede." It contends that, because we affirmed the trespass damages in 2019 and the time for Subsea to perfect an appeal of the trial court's May 5, 2021 judgment has expired, there is no pending challenge to the 2016 judgment's award of trespass damages. PILOT cites case law establishing that "[t]he supersedeas bond is part of the right of appeal and is only intended to indemnify the judgment creditor from losses caused by delay of appeal." *Muniz v. Vasquez*, 797 S.W.2d 147, 150 (Tex. App.—Houston [14th Dist.] 1990, no writ). PILOT asserts that there is nothing to "adequately protect" since the trespass damages "will not ever change regardless of the outcome of the present appeal."

In *Muniz*, appellee Vasquez obtained a judgment awarding $3,500 in damages and a writ of possession to certain real property. *Id.* at 148–49. The trial court set a $5,000 bond for appellant Muniz to suspend execution of the judgment pending his appeal, and Muniz posted a cash deposit in this amount. *Id.* at 150. Later, the court of appeals granted

Vasquez's motion to increase the amount to $14,000, but Muniz did not make any additional deposit. *Id.* Although "execution could have been issued" at that point, Vasquez instead filed a motion asking the court to disburse appellant's $5,000 deposit to him, and the trial court granted the motion. *Id.* Ultimately, the court of appeals found sufficient evidence to support the award of damages and possession. *Id.* However, it held that "[t]he release of supersedeas funds to Vasquez was clearly erroneous," because "[a] court may not summarily ascertain the amount of monetary damages occasioned by delay in appeal." *Id.* The appeals court ruled that Vasquez was authorized to retain only $3,615.07 of the funds, representing the amount of the money judgment plus post-judgment interest. *Id.* at 151. According to PILOT, *Muniz* demonstrates that "a portion of the bond (or money deposited with the court in lieu of a bond) can be released during the pendency of an appeal."

In response, Subsea first contends that this issue is waived because, although PILOT asked the trial court for disbursement of the trespass damages from the deposited funds, it did not ask the trial court to "dissolve [Subsea's] bond." *See In re East*, 476 S.W.3d 61, 67 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.) ("It is well established that arguments not presented to the trial court will not be considered in a petition for writ of mandamus."). We disagree that the issue was waived. In its "Motion to Disburse Undisputed Money Owed to PILOT From Funds on Deposit in Court's Registry," PILOT asked the trial court to do exactly what it requests here: to release the trespass damages, plus interest, from the funds on deposit in the trial court's registry. It is true that PILOT did not ask for the trial court to render an order "dissolv[ing Subsea's] bond," but that is presumably because, as discussed above, PILOT does not believe that a separate order

25

is necessary to terminate the suspension effect of a supersedeas bond or deposit. In any event, PILOT is not asking this Court to compel the rendition of an order "dissolv[ing] Subsea's] bond," but merely seeks disbursement of funds in the registry of the trial court.

We proceed to consider the merits of the issue. Under the rules, if the judgment debtor deposits cash in lieu of a supersedeas bond, the trial court clerk "must hold the deposit until the conditions of liability in [Rule 24.1](d) are extinguished," and "must then release any remaining funds in the deposit to the judgment debtor." TEX. R. APP. P. 24.1(c)(3). Rule 24.1(d) provides as follows:

> *Conditions of Liability.* The surety or sureties on a bond, any deposit in lieu of a bond, or any alternate security ordered by the court is subject to liability for all damages and costs that may be awarded against the debtor—up to the amount of the bond, deposit, or security—if:
>
> (1)    the debtor does not perfect an appeal or the debtor's appeal is dismissed, and the debtor does not perform the trial court's judgment;
>
> (2)    the debtor does not perform an adverse judgment final on appeal; or
>
> (3)    the judgment is for the recovery of an interest in real or personal property, and the debtor does not pay the creditor the value of the property interest's rent or revenue during the pendency of the appeal.

TEX. R. APP. P. 24.1(d). The combined effect of these rules is that, when a judgment debtor posts a cash deposit in order to suspend execution, the trial court clerk must hold the deposit until one of the three "Conditions of Liability" set forth in Rule 24.1(d) is satisfied. But as soon as any one of those conditions is satisfied, the trial court clerk is obligated to disburse the deposited cash up to the amount of the judgment to the creditor, with any remaining funds disbursed to the debtor. *See* TEX. R. APP. P. 24.1(c)(3), (d); *see also* TEX. R. APP. P. 24 cmt. ("Paragraph 24.1(d) provides the conditions for the surety to honor the bond and for the deposit to be paid to the judgment creditor."); *2200 W.*

*Alabama, Inc. v. Doc's Delight, L.L.C.*, No. 01-10-00364-CV, 2011 WL 2436288, at *2 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.) (holding that "[b]ecause the [Rule 24.1(d)] conditions for liability have been met, [the debtor] was entitled to the value of the unpaid rent during the pendency of the appeal, up to the amount of the deposit"); *In re Levitas*, No. 13-10-00345-CV, 2010 WL 2968189, at *3 (Tex. App.—Corpus Christi–Edinburg July 27, 2010, orig. proceeding) (mem. op.) (holding, where debtor did not "pay the value of the property's rent or revenue during the pendency of the appeal," that "all damages and costs that may be awarded" against the debtor, up to the amount of the deposit, must be taken from the funds on deposit and awarded to the creditor).

Here, there is no dispute that: (1) Subsea has failed to perfect an appeal from the May 5, 2021 judgment; and (2) Subsea has failed to perform the part of the judgment compelling it to pay trespass damages to PILOT. *See* TEX. R. APP. P. 24.1(d)(1). Thus, the trial court clerk is obligated under the rules to disburse the funds deposited by Subsea, up to the amount of the judgment plus post-judgment interest, to PILOT, with any remaining funds disbursed to Subsea. *See* TEX. R. APP. P. 24.1(c)(3), (d)(1), (d)(2).

That said, these undisputed facts were not in existence at the time the trial court rendered its ruling denying PILOT's request for disbursement of funds; they only became true at the time Subsea's time for filing a notice of appeal of the May 5, 2021 judgment expired. *See Hudson v. Aceves*, 516 S.W.3d 529, 539 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding) ("It is axiomatic that an appellate court reviews the actions of the trial court based on the record before the court at the time it makes its ruling."); *see also Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841

27

(Tex. 1979) (orig. proceeding) (per curiam) (holding that in an original proceeding, the appellate court may not consider evidence that was not part of the record before the trial court except to decide its own jurisdiction). Accordingly, PILOT has not shown that the trial court clearly abused its discretion, so as to warrant mandamus relief, by denying its motion to disburse.

PILOT's remaining issues in its petition for extraordinary writ argue that the trial court erred by providing in its October 26, 2021 order that Subsea may enter the premises on three days to prepare for the removal of improvements. PILOT argues that this order interferes with our jurisdiction and alters the status quo because the issue of whether Subsea is allowed to remove improvements is the subject of the instant appeal. We have already held that the trial court did not err by holding on May 4, 2021, that Subsea "may proceed" with removal. In any event, the parties' Agreed Temporary Injunction Order, which specifically allowed Subsea to remain on the premises but not to remove improvements, remains in effect. *See Perry Bros., Inc. v. Perry*, 734 S.W.2d 211, 212 (Tex. App.—Dallas 1987, no writ) (noting that, though "a temporary injunction generally expires upon rendition of a final judgment by the trial court," the court "may . . . continue a temporary injunction in effect after final judgment" and "[t]he condition or contingency which marks the duration of a temporary injunction is ordinarily set by the trial court in the injunction itself"). Thus, we do not agree that the trial court's order allowing Subsea to prepare for removal of improvements interfered with our jurisdiction or impermissibly altered the status quo.

For the foregoing reasons, we conclude that PILOT has not shown itself entitled to the relief requested in its "Petition for Writ of Mandamus, Prohibition, and/or Injunction."

28

### III.     PILOT'S RULE 24.4 MOTIONS

Finally, we address PILOT's two pending Rule 24.4 motions before this Court. In its First Rule 24.4 Motion, as in the first issue of its petition for extraordinary writ, PILOT asks us to order the disbursement of the trespass damages, plus post-judgment interest, from Subsea's cash deposit. As set forth above, the trial court clerk is now obligated to release those funds to PILOT given that Subsea has failed to pay the trespass damages or perfect an appeal of that award. *See* TEX. R. APP. P. 23.1(c), 24.1(d)(1). Though PILOT has not established that the trial court clearly abused its discretion in denying its March 3, 2021 motion to disburse, we agree that PILOT is now entitled to that relief.

We also agree with PILOT that we have the authority to grant it. Texas Rule of Appellate Procedure 24.4(a) states that, on motion by a party, an appellate court with jurisdiction over the appeal may review:

(1)     the sufficiency or excessiveness of the amount of security, but when the judgment is for money, the appellate court must not modify the amount of security to exceed the limits imposed by Rule 24.2(a)(1);

(2)     the sureties on any bond;

(3)     the type of security;

(4)     the determination whether to permit suspension of enforcement; and

(5)     the trial court's exercise of discretion under Rule 24.3(a).

TEX. R. APP. P. 24.4(a). As Subsea notes, the rule does not explicitly allow us to order the disbursement of a portion of the supersedeas funds on deposit. However, the determination we are asked to make here is effectively "whether to permit suspension of enforcement"—i.e, whether Subsea is still entitled to supersede the portion of the judgment awarding trespass damages. *See id.* It is not. We conclude that we have the jurisdiction and authority under this rule to grant the motion, and we do so.

29

PILOT's Second Rule 24.4 Motion challenges that part of the trial court's October 26, 2021 order increasing the amount necessary for PILOT to supersede the removal-of-improvements provision of the May 5, 2021 final judgment. *See* TEX. R. APP. P. 24.4(a)(1). The order increases the supersedeas amount from $200,000 to $350,000. PILOT argues that there was no evidence offered to support this increase because, while Subsea filed two affidavits in support thereof, those affidavits were not "offered . . . into evidence" at a hearing before the trial court held on October 21, 2021. We disagree. Subsea's affidavits were attached to its October 11, 2021 motion to increase bond; further, the affidavits were discussed at the hearing, and the court acknowledged in its order that it considered the affidavits. PILOT did not object to the discussion of the affidavits at the hearing and does not argue on appeal that the affidavits were inadmissible under the rules of evidence. Under these circumstances, we conclude the trial court did not err by considering the affidavits.

PILOT further contends that the increase was improper because the judgment Subsea is superseding is a judgment "for property," and Subsea did not establish that the "value of the improvements" had changed. PILOT claims that "the proper measure" for determining the supersedeas amount with respect to a judgment for property is the value of the property. Again, we disagree. Rule 24.2(a)(2) states:

> When the judgment is for the recovery of an interest in real or personal property, the trial court will determine the type of security that the judgment debtor must post. The amount of that security must be at least:
>
> (A)     the value of the property interest's rent or revenue, if the property interest is real; or
>
> (B)     the value of the property interest on the date when the court rendered judgment, if the property interest is personal.

TEX. R. APP. P. 24.2(a)(2). The rule states that the amount of security must be "at least"

30

the property's value but it does not, explicitly or implicitly, restrict the trial court from ordering security in excess of that amount. Instead, the trial court has the general discretion to "make any order necessary to adequately protect the judgment creditor against loss or damage that the appeal might cause." TEX. R. APP. P. 24.1(e). Accordingly, we deny PILOT's Second Rule 24.4 Motion.

## IV.    CONCLUSION

In appellate cause number 13-21-00368-CV, we vacate the stay previously imposed and deny PILOT's petition for extraordinary writ. In appellate cause number 13-21-00169-CV, we affirm the trial court's judgment. Again, we emphasize that the portion of the 2016 judgment providing that Subsea shall have thirty days within which to remove its improvements remains in full force and effect. In accordance with the 2016 judgment and this opinion, the thirty-day period shall begin immediately when the trial court's judgment, having disposed of all issues and parties, becomes final and unassailable after all appeals are exhausted.

We grant PILOT's "Rule 24.4 Motion to Release [Subsea] Cash in Lieu of Bond" and order the trial court clerk to disburse Subsea's cash deposit, up to the amount of the trespass damages plus interest, to PILOT. The remainder of Subsea's cash deposit, if any, shall be disbursed to Subsea. We deny PILOT's "Rule 24.4 Motion Challenging Supersedeas Amount and Request for Emergency Stay."

DORI CONTRERAS
Chief Justice

Delivered and filed on the
13th day of October, 2022.

31